UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KEY INVESTMENT FUND LIMITED
PARTNERSHIP XXII,**

            **Plaintiff,**

**-vs-**                                            **Case No. 6:07-cv-1658-Orl-28GJK**

**WORTHWHILE DEVELOPMENT IV, INC.,
H.J. ROYALL, JR.,**

            **Defendants.**
_____

**KEY INVESTMENT FUND LIMITED
PARTNERSHIP III**, an Ohio limited partnership,

            **Consolidated Plaintiff,**

**-vs-**                                            **(prior) Case No. 6:07-cv-1659-Orl-28DAB**

**WORTHWHILE DEVELOPMENT II, INC.,**
a Florida corporation**,**

**WORTHWHILE AFFORDABLE
DEVELOPMENT II, INC.,** a Florida
corporation, and

**H.J. ROYAL, JR.,**

            **Consolidated Defendants,**
_____

## REPORT AND RECOMMENDATION

      This cause came on for consideration without oral argument on the Court's own motion

On February 28, 2008, Case Number 6:07-cv-1659-ORL-28GJK ("Case Number 6:07-cv-1659") was consolidated by Order of the Court with Case Number 6:07-cv-1658-ORL-28GJK ("Case Number 6:07-cv-1658"). Doc. No. 36 in 6:07-cv-1659. The Court then directed the Clerk of the Court to close Case Number 6:07-cv-1659. This report recommends that 6:07-cv-1659 be reopened and the cases be separated.

I.   Case No. 6:07-cv-1658[1]

On or about January 16, 1998, Worthwhile Development IV, Inc. (the "General Partner") a Florida corporation, and H.J. Royall, Jr. (the "Guarantor"), a Florida resident, formed a Florida limited partnership named Worthwhile Development IV, LTD (the "Limited Partnership"). Doc. No. 1-3. According to the Certificate and Affidavit of the Partnership, the General Partner would be a general partner with the right to 1% of the profits and the Guarantor would be a limited partner with the right to 99% of the profits. Doc. No. 1-3 at 3. The stated purpose of the Limited Partnership was to "acquire, own, lease, operate, manage, develop, construct, improve, repair, renovate, sell, transfer and dispose of real property and to engage in any other business or activity in order to obtain profits therefrom." Doc. No. 1-3.

On February 25, 2000, the existing initial partnership agreement was terminated and a new partnership agreement ("Limited Partnership Agreement") was entered into for the Limited Partnership. Doc. 32-2 at 6. The Guarantor withdrew as the limited partner and Key Investment Fund Limited Partnership XII[2] (the "Assignor") became the new limited partner. *Id*. at § 1.1. According to the new Limited Partnership Agreement, the Limited Partnership's

---

[1] All document references throughout this subsection refer to Case No. 6:07-cv-1658.

distribution of profits was as follows: .01% to the General Partner; 99.9% to the new limited partner, the Assignor. *Id*. at 13 § 3.1. The stated purpose of the Limited Partnership was to acquire, construct, own, finance, lease, and operate the Nelson Park Apartments (the "Project"), a low income housing development. Doc. No. 1 at 3.

On February 25, 2000, a Development Agreement (the "Development Agreement") and a Guaranty Agreement (the "Guaranty Agreement") were entered into concerning the Limited Partnership and the Project. Doc. Nos. 31-5; 1-5. The Development Agreement was entered into by the Limited Partnership and Worthwhile Affordable Development IV, Inc. (the "Developer"). Doc. No. 31-5.[3] Pursuant to the Development Agreement, the Developer provided "certain services with respect to the Project in connection with the development and construction thereof in [Developer's] capacity as an independent contractor for the [Limited] Partnership." Doc. No. 31-5 at ¶ E. "In consideration for such services, the [Limited] Partnership has agreed to pay to the Developer certain fees as set forth in [the] Development Agreement." *Id*. at ¶ F. The Development Agreement is a separate and distinct agreement from the Limited Partnership Agreement. As such, the Developer did not execute or sign the Limited Partnership Agreement. Doc. No. 32-2 at 48.

The Guaranty Agreement was entered into purportedly for the benefit of the Assignor and the Limited Partnership. Doc. No. 1-5 at 2. The Guaranty Agreement stated that the Assignor was unwilling to make capital contributions to the Limited Partnership unless the Guarantor made himself personally liable to the Limited Partnership and the Assignor for certain

---

[2] The Assignor, Key Investment Fund Limited Partnership **XII**, is a different entity than the Limited Partner Plaintiff, Key Investment Fund Limited Partnership **XXII**.
[3] The Guarantor controls the General Partner and the Developer. Doc. Nos. 1-3 at 5; 31-5 at ¶ D, 9; 32 at ¶ 9.

obligations stated therein. *Id*. at ¶ D. The Guarantor executed the Guaranty Agreement on behalf of himself and the General Partner.[4] Doc. No. 1-5 at 9.

On June 1, 2000, by assignment and ratification, the General Partner, the Assignor, and Key Investment Fund Limited Partnership XXII (the "Limited Partner"), an Ohio limited partnership, entered into an agreement whereby the Assignor assigned all of its rights, obligations, and interests as a limited partner under the Limited Partnership to the Limited Partner. Doc. No. 1-5 at 13. Under the assignment, the Limited Partner agreed to be bound by all terms of the Limited Partnership and all parties to the assignment agreed that any references to the Assignor in the Limited Partnership documents would be treated as a reference to the Limited Partner. *Id*.

On October 18, 2007, the Limited Partner filed its Complaint (Doc. No. 1) against the General Partner and the Guarantor. In the Complaint, the Limited Partner alleges that General Partner breached the Limited Partnership Agreement, the Guarantor breached the Guaranty Agreement, and seeks relief in the form of damages, a declaratory judgment concerning the rights and obligations of the parties under the Limited Partnership Agreement, as well as specific performance under the Limited Partnership Agreement. Doc. No. 1. The Complaint also seeks a money judgment against the Guarantor for the General Partner's breach of the Limited Partnership Agreement. *Id*.

In Count IV of the Complaint, the Limited Partner alleges the following:

> 55. General Partner and **Developer** are in breach of several of their respective duties and obligations under the Partnership

---

[4] In their Answer, Defendants' admit that the Guarantor Defendant executed the Guaranty Agreement, but deny the Limited Partner's allegations concerning the Guaranty Agreement. Doc. No. 24 at ¶ 11.

> Agreement as set forth in Counts I, II, and III of this Complaint.
>
> . . .
>
> 57.  As a result of General Partner and **Developer's** respective breaches under the Partnership Agreement, and Guarantor's breaches under the Guaranty [Agreement], Limited Partner has suffered damages in the amount of at least $9,270,101.00, and continues to suffer damages.

Doc. No. 1 at ¶¶ 55, 57 (emphasis added). The Limited Partner, however, did not bring suit against the Developer and the Developer has not been joined as a party-defendant.[5] In the Complaint, the Developer is not defined or described by the Limited Partner.

## II.  Case No. 6:07-cv-1659[6]

On or about June 17, 1997, Worthwhile Development II, Inc. (the "General Partner II"), a Florida corporation, and H.J. Royall, Jr. (the "Guarantor II"), a Florida resident, formed a Florida limited partnership named Worthwhile Development II, LTD (the "Limited Partnership II"). Doc. No. 34-3 at 3. The Limited Partnership II was formed to develop, own, construct, operate and manage a 330-unit multifamily low-income housing development known as Sarah's Place Apartments (the "Project II"). *Id*.

On or about December 1, 1997, the Partnership Agreement (the "Limited Partnership Agreement II") was amended to withdraw the Guarantor II as a limited partner and to add Key Investment Fund Limited Partnership III (the "Limited Partner II"), an Ohio limited partnership, as the new limited partner. *Id*. According to the Amended Certificate and Affidavit of Limited

---

[5] The General Partner Defendant and the Guarantor Defendant moved to join the Developer in 6:07-cv-1658 and sought to have the Developer file a Third-Party Complaint against the Partnership. Doc. Nos. 31-32. However, for the reasons stated therein, an Order filed contemporaneously with the instant Report and Recommended denied the motion to join the Developer.

[6] All document references throughout this subsection refer to Case No. 6:07-cv-1659.

Partnership, the General Partner II would be a general partner with the right to 0.1% of the profits and the Limited Partner II would be a limited partner with the right to 99.9% of the profits.  Doc. No. 34-2 at 2.

According to the Limited Partner II, Section 16.09 of the Limited Partnership Agreement II contains a Guaranty Agreement (the "Guaranty Agreement II"), and there is no other written document containing or pertaining to the Guaranty Agreement II.  Doc. No. 34 at ¶¶ 22. According to the Limited Partner II, in Section 8.09(b) of the Limited Partnership Agreement II, Worthwhile Affordable Development II, Inc. (the "Developer II") guaranteed to provide certain funds to the Limited Partnership II to ensure its sustainability and viability.  *Id*. at ¶ 19.  There is no documentation other than the Limited Partnership Agreement II reflecting an agreement between the Limited Partner II and the Developer II.  The Limited Partnership Agreement II was executed and signed by the General Partner II, the Limited Partner II, the Guarantor II, and the Developer II.  Doc. No. 34-3 at 75-77.

On February 25, 2008, the Limited Partner II filed an Amended Complaint (the "Amended Complaint") (Doc. No. 34)[7] against the General Partner II, the Guarantor II, and the Developer II.  In the Amended Complaint, the Limited Partner II alleges that the defendants breached the Limited Partnership Agreement II, and seek relief in the form of damages against the General Partner II and the Developer II, a declaratory judgment concerning the rights and obligations of parties under the Limited Partnership Agreement II, as well as specific performance of the Limited Partnership Agreement II.  Doc. No. 34.  The Amended Complaint

---

[7] The original Complaint (Doc. No. 1) was filed on October 18, 2007; the same day as the Complaint filed in Case Number 6:07-cv-1658.

6

also seeks a money judgment against the Guarantor II for any of the General Partner II's and the Developer II's alleged breaches of the Limited Partnership Agreement II.

### III. CONSOLIDATION

On February 15, 2008, the Court entered an Order to Show in each case directing the parties to show cause why the cases should not be consolidated. Doc. Nos. 36 in Case No. 6:07-cv-1658, 30 in Case No. 6:07-cv-1659. In Case No. 6:07-cv-1658, the General Partner and the Guarantor filed a response stating that they had no objection to consolidating the cases. Doc. No. 37. The Limited Partner also stated that it had no objection to consolidation, but noted that "there are two different plaintiffs in each case. . ." Doc. No. 39. In Case No. 6:07-cv-1659, similar responses were filed. Doc. Nos. 33, 35. Finding no objection, the Court ordered that the cases be consolidated and that the Clerk close Case Number 6:07-cv-1659.

### IV. UNOPPOSED MOTION FOR INITIAL PRETRIAL CONFERENCE

On May 13, 2008, the General Partner, Guarantor, the proposed Developer defendant, General Partner II, Developer II, and the Guarantor II (the "Defendants") filed an Unopposed Motion for Initial Pretrial Conference (the "Motion") (Doc. No. 44 in 6:07-cv-1658).[8] In the Motion, the Defendants assert that they "are uncertain as to the state of the pleadings and feel that it is more appropriate for the parties to designate, in separate pleadings, the apartment complexes and parties to who pleadings refer." Doc. No. 44 at ¶ 5. Furthermore, the collective Defendants request that the Court "consider methods by which the pleadings can make sense; that they are segregated to allow the Court, parties, counsel and witnesses to be able to determine

---

[8] In the Motion, the proposed Developer defendant is mistakenly referred to as Worthwhile Development II, Inc., by the collective Defendants when the actual Developer is Worthwhile Affordable Development IV, Inc. *See* Doc. No. 44 at 2.

responses, pleadings and issues raised therein." *Id*. at ¶ 6. Additionally, the Defendants request that "the Court . . . consider any other extensions that may be necessary because of the confusion in the litigation at this stage." *Id*. at ¶ 7. To this end, the collective Defendants request an Initial Pretrial Conference Hearing. *Id*. at ¶ 8.

### V. RULE 42(a)

Rule 42(a), Federal Rules of Civil Procedure, governs the practice and procedure concerning consolidation of cases and states:

> (a) **Consolidation**. If actions before the court involve a common question of law or fact, the court may:
> (1) join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

*Id*. Rule 42(a) "'codifies a district court's inherent managerial power to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants.'" *Young v. City of Augusta*, 59 F.3d 1160, 1168 (11th Cir. 1995) (citations omitted). The Fifth Circuit Court of Appeals has held that the Rule "'is permissive and vests a purely discretionary power in the district court.'" *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1013 (5th Cir. 1977) (citations omitted).[9] Although consolidation may be available because of common issues of law or fact, it is not required. *Young*, 59 F.3d at 1168 (citations omitted).

### VI. ANALYSIS

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

These consolidated cases involve different plaintiffs and different defendants except that the guarantor defendant in both cases is the same. While the people individually involved in various defendant entities may be the same, the parties are different. Additionally, the cases involve alleged breaches of different partnership agreements by different defendants, all of which pertain to different apartment complexes. The declaratory relief sought in the cases arises under different contracts. While the cases may share similar legal theories, they are based on separate agreements involving separate parties and distinct projects.

As the Motion indicates, consolidation of the cases has not led to efficiency or clarity. For example, on February 25, 2008, in Case No. 6:07-cv-1659 the Limited Partner II filed an Amended Complaint (Doc. No. 34), but after the case was consolidated and closed on February 28, 2008, the Amended Complaint was not filed in 6:07-cv-1658 and a response has yet to be filed in either case. The Court recognizes that the parties had an opportunity to object to consolidation but failed to do so. Nonetheless, the Court finds that for purposes of judicial economy, clarity, and to guard against prejudice to any of the parties, the actions should be separated.

**THEREON** it is **RECOMMENDED** that:

1) The Court vacate or set aside the Order of consolidation (Doc. No. 36 in 6:07-cv-1659; Doc. No. 40 in 6:07-cv-1658);

2) The Court reopen Case Number 6:07-cv-1659;

3) The Court grant in part and deny in part Defendants' Unopposed Motion for Initial Pretrial Conference (Doc. No. 44 in Case No. 6:07-cv-1658). To the extent that after the cases are separated the

        Motion should be granted and an Initial Pretrial Conference will be held for each case; and

4) After the Magistrate holds the Initial Pretrial Conference as requested in the Motion, the Court allow the parties to submit new case management reports and the Court will issue a new Case Management Order in each case.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE** and **ORDERED** at Orlando, Florida on June 13v, 2008.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE